# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 5, 2013

## ANTHONY BARNES v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-06129    Lee V. Coffee, Judge**

---

**No. W2012-01425-CCA-R3-PC  -  Filed March 1, 2013**

---

The petitioner, Anthony Barnes, appeals the denial of his petition for post-conviction relief. He pled guilty to possession of cocaine with intent to deliver and possession of marijuana with intent to deliver. The plea agreement provided for an effective eight year sentence and, further, that the petitioner could apply for a suspended sentence. After a hearing, the trial court ordered that the sentence be served in incarceration. In this appeal, the petitioner contends that his plea was not entered knowingly and voluntarily because he was denied his right to the effective assistance of counsel. Specifically, he contends that trial counsel was ineffective for failing to ensure that the State complied with an agreement to recommend probation to the trial court. Following review of the record, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERTT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

James P. DeRossitt, IV, Memphis, Tennessee, for the appellant, Anthony Barnes.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Amy P. Weirich, District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Procedural History and Factual Background

The relevant facts, as recited by the State at the plea acceptance hearing, underlying the petitioner's convictions are:

[O]n June 22nd of 2010, officers stopped the [petitioner] traveling eastbound on Crump here in Memphis and Shelby County in violation of the seatbelt law. When they stopped the vehicle, they approached the vehicle and observed a clear plastic bag containing cocaine in the driver's side floorboard; and the officers placed the [petitioner] under arrest, located some additional cocaine there, and located some mari[j]uana at his residence. . . .

A Shelby County grand jury returned a four-count indictment charging the petitioner, using alternative theories, of unlawful possession of over twenty-six grams of cocaine with intent to sell or to deliver and unlawful possession of marijuana with intent to sell or to deliver. Because the amount of cocaine possessed was over twenty-six grams, the petitioner was not eligible for an alternative sentence for that charge. However, an agreement was reached with the State, and the petitioner pled guilty to possession of cocaine, less than twenty-six grams, with intent to deliver and possession of marijuana with intent to deliver. The agreement further provided for sentences of eight years and one year, to be served concurrently, for the respective convictions. The prosecutor's file also contained the notation, "Ok to Pss," meaning that the plea agreement did not preclude the petitioner from seeking a suspended sentence. At the guilty plea hearing, the trial court reviewed the charges, the rights which the petitioner was waiving, possible sentence ranges, and specifically asked the petitioner if he understood that, "there's no guarantee you're going to get probation just because you're entering this guilty plea?" The petitioner responded that he understood and even asked the court what steps he could take to increase his chances of receiving an alternative sentence. At the subsequent sentencing hearing, a transcript of which is not contained in this record, the trial court ordered that the sentence be served in incarceration.

No direct appeal was taken of the imposed sentence, but the petitioner did file a timely pro se petition for post-conviction relief. In the petition, it was alleged that the guilty plea was not entered knowingly and voluntarily and, further, that trial counsel was ineffective in his representation of the petitioner. Notice was filed in the case that no amended petition for relief would be filed. A hearing was held on the matter at which only the petitioner testified.

The petitioner testified that he had known trial counsel since high school and that trial

counsel had previously represented him in other cases. He indicated that he retained trial counsel to represent him in the instant case because of that prior relationship. The petitioner acknowledged that he had a substantial amount of cocaine in his possession when he was arrested and that marijuana was found in his home. However, he maintained that the cocaine was not his and that he was only taking it to the person to whom it belonged. Nonetheless, he stated that he had agreed to accept the sentence length and entered the guilty plea in the case.

However, he maintained that he entered the plea only because he was under the impression that the prosecutor in the case would recommend to the trial court that he receive probation. The petitioner stated that in his experience, if the prosecutor recommended a probationary sentence, "nine and a half times out of ten" the court would accept the recommendation. He testified that trial counsel told him that probation would be recommended and that the petitioner would likely get probation because he had not been arrested in over ten years and was not a "major player." Trial counsel also showed him the State's case file, which included a notation which said, "okay to pss." Despite his belief that an agreement for a recommendation was in place, the petitioner acknowledged that he was aware that the trial court was under no obligation to accept the recommendation. However, the petitioner testified that he was confident he would receive probation if it was recommended by the prosecution.

The petitioner acknowledged that he had signed the guilty plea agreement and stated to the trial court that he understood its terms. He acknowledged that on the day the plea was entered, trial counsel had negotiated a lower bond so that he could be released immediately pending sentencing. He also acknowledged that trial counsel had negotiated the original charge down so that probation was even a possibility. However, despite his possession of the drugs, he maintained that he had no intent to sell them and did not believe that it could have been established at trial that he did have the requisite intent. The petitioner testified that he would not have entered the plea agreement if he had known it was not a "sure thing" that he would get probation.

Apparently a different prosecutor represented the State at the sentencing hearing and did not recommend probation. Although we do not have the transcript of the hearing, from the testimony and comments made at the post-conviction hearing, it appears that the prosecutor argued against a probationary sentence. The petitioner testified that, prior to the beginning of the hearing, trial counsel offered to have the hearing postponed until the original prosecutor was available. The petitioner, however, declined trial counsel's suggestion because he was confident in the deal, which he believed was that the State had agreed to recommend probation to the court. According to the petitioner, after the trial court ordered that the sentence be served in incarceration, trial counsel told the petitioner that he

would make sure that the petitioner got the deal he signed. However, the petitioner said he never heard from trial counsel again.

On cross-examination, the petitioner specifically acknowledged that the State never said to him that he was guaranteed to receive a probationary sentence. He acknowledged that the court, prior to accepting his pleas, made clear to him that there was no guarantee. The petitioner also did not dispute that the transcript of the plea hearing reflected that the prosecutor stated only that the petitioner would be requesting probation, not that the State had agreed to recommend it. The petitioner specifically testified that he was well aware that the sentencing court would determine whether he was a good candidate for probation on its own after the hearing. He testified that his complaint was that the State did not recommend a probationary sentence, which he believed that the prosecutor had specifically agreed to do.

Upon questioning by the post-conviction court, the petitioner admitted that he had several prior criminal charges and that he had been on probation multiple times. In fact, he testified that he could not count the number of times that he had pled guilty previously. The petitioner testified that if the State had recommended probation, but the trial court denied it on the basis of his previous criminal and probationary history, he would have had to "bite that bullet" and would not have been unhappy with trial counsel. He asserted that his only complaint was trial counsel's failure to secure a concrete agreement from the State to recommend probation.

After hearing the evidence presented, the post-conviction court denied the petition for relief. This timely appeal followed.

## Analysis

On appeal, the petitioner contends that his plea was not entered knowingly and voluntarily because trial counsel was ineffective in his representation. Specifically, the petitioner contends that trial counsel was ineffective by not "appropriately advis[ing him] concerning the proper course of action" to take when a different prosecutor was present at the sentencing hearing and by not taking "any steps to enforce the plea agreement to which [the petitioner] was entitled." He contends that the proof at the hearing established that: (1) trial counsel promised he would get probation; (2) trial counsel had worked out a deal which provided the State would not oppose probation; and (3) the State took a position inconsistent with that deal at the sentencing hearing. He maintains now that the State breached an enforceable agreement by opposing probation and that trial counsel performed deficiently by not acting to enforce the agreement. The petitioner contends that trial counsel was obligated to reschedule the hearing or take other actions to ensure that the State did not oppose probation, despite the fact it was the petitioner's decision to proceed.

-4-

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31).

To succeed in a challenge for ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably-based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense

are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, conclusions of law are reviewed under a purely de novo standard, with no presumption of correctness. *Id*. at 458.

Again, on appeal, the petitioner's only claim of ineffective assistance of counsel is based upon trial counsel's failure to secure or enforce a recommendation for probation from the State, which the petitioner believed had been promised. In denying relief on this issue, the post-conviction court made the following findings:

> The petitioner testified that he believed that he had been ineffectively represented because the petitioner "thought he had a deal for probation" based on writing in the district attorney general's file. The Petitioner testified that his subjective belief that he felt confident that he would get probation as the petitioner was "not a major player and that he had no arrests for 10 years." . . .
>
> At the evidentiary hearing, the Petitioner insisted that he entered a guilty plea only because he was assured that he would receive a suspended sentence and that trial counsel told the Petitioner that "he could get me probation." . . .
>
> The lengthy colloquy between the petitioner and the trial court at the plea hearing indicates that the trial court told the Petitioner several times that the Petitioner was not guaranteed probation at a sentencing hearing. The prosecutor informed the trial court at the guilty plea submission hearing that "he is petitioning the court for a suspended sentence at a later date." Clearly, the Petitioner understood that probation was not a guarantee in this case. The trial court questioned the Petitioner to ensure that the plea was freely and voluntarily made . . . . This petitioner has failed to prove his guilty plea was not knowing or voluntary.
>
> . . . .
>
> The Petitioner's stance on his post-conviction testimony is inconsistent and contradictory with this testimony when he entered his guilty plea before the trial court. This post-conviction court takes notice of the discrepancy in

the Petitioner's various positions. This court finds that the petitioner understood his United States and Tennessee Constitutional rights and that the petitioner intelligently and knowingly waived his rights and freely and voluntarily entered his guilty pleas without any threats, promises, pressure, force or coercion.

The Petitioner testified at the evidentiary hearing that the prosecutor never promised probation and that the Petitioner understood that there was no guarantee of probation. The Petitioner based his subjective expectation on a note in the prosecutor's file that he could "ask for PSS." The Petitioner admitted that he understood that the trial court could reject probation even if a suspended sentence had been recommended by the prosecutor. The Petitioner testified that he knew that "the Judge would usually follow a recommendation" for probation. However, the Petitioner cautioned that he "already knew the Judge could go the opposite way even if the prosecutor recommended probation." The Petitioner admitted that he had been on probation several times before. The Petitioner admitted further that he "couldn't count the number of times" that he had pled guilty. This Petitioner simply felt that, subjectively, he was a good candidate for probation.

At the evidentiary hearing, the Petitioner admitted that the "facts were not good for me" as he had drugs in his truck and at his home. The Petitioner acknowledged that he could have been convicted of possessing drugs with intent to deliver cocaine. This Petitioner has vast experience with courts and guilty pleas. The Petitioner testified that he had been on Federal Probation for a drug offense and that he had been on probation for manslaughter. The Petitioner's criminal history spans almost 25 years, including multiple convictions for drugs. Simply put, the Petitioner was not a suitable candidate for probation . . . . The petitioner is aggrieved because trial counsel was unable to get an agreement from the prosecutor to recommend probation. Accordingly, the petitioner has failed to establish by clear and convincing evidence any of his claims for relief.

It is clear that the Petitioner understood his constitutional rights. The Petitioner repeatedly and insistently assured the trial court that he understood all his constitutional rights and the consequences of his guilty plea. The Petitioner knew that he was not guaranteed a suspended sentence on this case. Trial counsel was able to negotiate a dismissal of a failure to appear indictment. Trial counsel was able to negotiate a guilty plea that would allow the petitioner to ask for probation to a lesser charge, as the indicted offense

was a Class B felony for which the Petitioner was statutorily ineligible for probation consideration. Trial counsel performed admirably for the Petitioner.

The court does not accept as credible the testimony of the petitioner. "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matter entrusted to the trial judge as the trier of facts." *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). This Petitioner had a[n] unrealistic **subjective hope** that the trial court would grant probation at a sentencing hearing. The Petitioner testified that he knew that there was never an agreement that the prosecutor would recommend probation or that the trial court would grant a suspended sentence. Judging this case by the totality of the circumstances test, this post-conviction court finds that the [petitioner] entered a guilty plea freely and voluntarily after intelligently and knowingly waiving his constitutional rights to avoid a greater sentence after a jury trial. The [petitioner] faced a possible sentence of 24 years if convicted by a jury. This issue is wholly without merit.

Following review of the record, we conclude that nothing in the record preponderates against the post-conviction court's findings. The petitioner's argument is based wholly upon his own testimony to the court at the post-conviction hearing. That testimony would suffice to support, at most, a finding that the petitioner had a subjective belief that the State had promised to recommend probation. In any event, the post-conviction court specifically found that the petitioner was not a credible witness. It has been noted on numerous occasions that it is not the province of this court to reweigh or reevaluate credibility determination made by the trier of fact. *See Burns*, 6 S.W.3d at 461. There was simply no evidence to suggest that an agreement was reached with the State. The prosecutor at the guilty plea hearing testified only that the petitioner would be seeking an alternative sentence at a later hearing. The notation on the file likewise merely referenced that it was now possible for the petitioner to seek a suspended sentence because of a reduction in the charge. Absent the presence of such an agreement, trial counsel cannot be faulted for failing to take the necessary "steps to enforce the plea agreement to which [the petitioner] was entitled."

The petitioner also complains that trial counsel should have "appropriately" advised him on the proper course of action to take when a different prosecutor appeared at the sentencing hearing. However, by his own testimony at the post-conviction hearing, the petitioner stated that trial counsel asked him if he wanted to continue the hearing until the original prosecutor could be present. It was the petitioner who chose to move forward with sentencing on that date despite trial counsel's discussion. Trial counsel cannot be faulted for a decision made by the petitioner himself.

As further noted by the post-conviction court, the petitioner's testimony at the post-conviction hearing stood in direct contravention to his statements at the guilty plea hearing. At the guilty plea hearing, he was specifically informed that probation was not guaranteed. The petitioner specifically acknowledges that he was aware of that fact. The petitioner even addressed the trial court and asked what steps he could take to increase his chances of being given probation. Moreover, the petitioner, who had multiple prior convictions, sentences of probation, and considerable experience with the criminal justice system, had to be aware that he was guaranteed probation. His testimony to the contrary, as pointed out by post-conviction court, is simply not credible.

A defendant's plea of guilty constitutes an admission in open court that the defendant committed the acts charged in the indictment. *Brady v. United States*, 397 U.S. 742, 748 (1970). The plea, however, is more than an admission; it is the defendant's consent that judgment of conviction may be entered without a trial. *Id*. A defendant's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than simply lip service. Indeed, the defendant's sworn statements and admissions of guilt stand as witness against the defendant at the post-conviction hearing when the defendant disavows those statements. Again, the transcript of the plea hearing in this case is strong evidence against and belies the petitioner's contentions. Following review of the record, we conclude that the petitioner has failed to establish that the proof preponderates against the findings made by the post-conviction court that he received the effective assistance of counsel and that his plea was entered knowingly and voluntarily.

## CONCLUSION

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE